UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:12-354-DCR

ANGELO KREE HESTER,                                             PETITIONER,

V.                          **MAGISTRATE JUDGE'S REPORT
                            AND RECOMMENDATION**

DON BOTTOM, *Warden*,                                          RESPONDENT.

*** *** *** ***

This matter is before the undersigned on Angelo Kree Hester's *pro se* Petition for Writ of

Habeas Corpus under 28 U.S.C. § 2254. [Record No. 1]. Consistent with local practice, this

matter has been referred to the undersigned for a report and recommendation pursuant to 28

U.S.C. § 636(b)(1)(B).  For the reasons discussed below, it is recommended that Hester's motion

[Record No. 1] be denied.

I.   FACTUAL & PROCEDURAL BACKGROUND

The following factual and procedural summary is taken from the Kentucky Supreme

Court opinion rendered following Hester's state direct appeal.

> On April 2, 2003, between 10 and 11 P.M., Chris Manley and his fiancée, Tammy
> Sanders, were at their home on Manhattan Drive in Lexington. Sanders was
> pregnant and due to give birth the next day. The couple was in bed watching
> television when the doorbell rang. Manley had been dozing and was dressed only
> in underclothes, so he asked Sanders to answer the door. When Sanders opened
> the front door, she encountered a middle-aged woman who claimed to be lost and
> asked to use the house phone. Sanders allowed the woman to use the phone, and
> after an unsuccessful attempt to reach anyone, the woman thanked her and left.
> Sanders then returned to bed.
>
> A short time later, the doorbell rang again. Manley looked outside and saw the
> woman who had rung the doorbell earlier. Again he asked his fiancée to answer
> the door. When Sanders opened the door, the woman asked for directions to a

certain street. Sanders replied that she did not know the location of the street and called out to Manley to ask if he knew how to get there. At that point a masked man jumped from around the side of the house, pointed a gun at her, and told her to get into the house. The man yelled at her to "get down." As she tried to comply with this order, she was hit on the back and fell. To avoid landing on her stomach, she turned and fell instead on her right arm, dislocating her elbow and breaking the bone in multiple places.

Once Sanders was on the ground, more masked men with guns entered the house. Manley walked into the hallway and immediately put his hands in the air. One of the men demanded that he give them drugs and money, repeatedly asking, "Where's the good stuff?" One assailant backed Manley into the bedroom, ordered him to get down, and then shot him in the leg. The assailant continued to look for money and drugs. Another assailant threatened Manley, saying that he would be killed if he did not tell him where to find "the stuff." Manley said the only drugs he had were some prescription Clonopin in the kitchen. The men took a bag of change from the bedroom.

The men then confronted Sanders, put a gun to her head, and demanded to know where the drugs and money were. She told them she did not know what they wanted. She then directed them to the prescription drugs on the kitchen counter and told them that the only money in the house was in her purse and in Manley's wallet. She stated that she had jewelry in her bedroom. The masked men took her purse and jewelry before leaving the residence.

After the men left, Sanders made her way to Manley, who had already called 911. Sanders took the phone and followed the operator's directions to place a tourniquet on Manley's leg. Soon, Emergency Medical Services arrived and took the couple to Central Baptist Hospital.

At the hospital, Manley was admitted for observation for his gun shot wound. He remained under observation for twenty-four hours and then remained at the hospital with Sanders while she had an operation on her elbow. On April 26th, two days after the home invasion, Sanders began leaking amniotic fluid, so the doctors induced labor and she gave birth to a healthy baby.

Sanders saw at least four armed men on the night of the home invasion, and Manley saw three different men. Neither Sanders nor Manley could identify any of the men, whose faces had been concealed by masks, but they had been able to tell that the men were African–American and knew that each had been carrying a gun. Police received a tip in November 2003 that a woman named Wanda Hughes was involved in the robbery. Sanders and Manley identified Hughes in a photo line-up as the woman who came to their house on the night of the invasion. Hughes was arrested and led the police to five other individuals—Adrian Brown, Arian Brown, Teddy Hawkins, Jeremy Rice, and Appellant—whom she claimed were involved in the crime.

2

> Appellant was charged with first-degree robbery and first-degree burglary, and with being a second-degree persistent felony offender and was tried in July 2004. He was tried with Adrian Brown and Jeremy Rice. At trial, he testified in his own defense, claiming that he was not present during the home invasion and that he did not even know several of the alleged participants in the crime. Nevertheless, the jury convicted him on all three counts and he was sentenced to twenty years in prison.

Record No. 14-13, at 1-4, *available at* Hester v. Commonwealth of Kentucky, 2004-SC-000794-MR, 2006 WL 2707441, at *1-2 (Ky. Sept. 21, 2006). On August 27, 2004, Hester was sentenced to twenty (20) years incarceration after being convicted of First Degree Robbery, First Degree Burglary, and Second Degree Persistent Felony Offender. [Record No. 14-17]. On appeal to the Kentucky Supreme Court, his conviction was affirmed. [Record No. 14-13]. Hester then filed a Motion to Vacate, Set Aside or Correct his Sentence under KENTUCKY RULE OF CRIMINAL PROCEDURE 11.42, which the Circuit Court denied on all grounds without a hearing. [Record No. 14-12]. Subsequently, the Kentucky Court of Appeals reversed and remanded the matter to the Circuit Court for an evidentiary hearing on one (1) of Hester's claims of error, ineffective assistance for failure to assert an alibi defense. [Record No. 14-9]. Following an evidentiary hearing on remand, the Circuit Court again denied Hester's motion on all grounds, and was affirmed by the Kentucky Court of Appeals on January 6, 2012. [Record Nos. 14-4; 14-8].

On December 3, 2012, Hester filed the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Record No. 1]. In his petition, Hester asserts the following eight (8) grounds for relief:

1) Hester's right to effective assistance of counsel was violated by his attorney's failure to file a motion to sever his trial from his co-defendants;

2) Appellate counsel was ineffective because he failed to raise claims on direct appeal that trial counsel was ineffective for failing to move to sever defendants and failure to present an alibi defense;

3) Hester was denied due process of law when the trial court erred by allowing testimony concerning Hester's alleged drug activities;

4) Hester was denied due process of law when the trial court allowed testimony about the victim's pregnancy;

5) Hester was denied due process of law when the trial court erred by limiting the scope of defense counsel's cross-examination of Arian Brown;

6)  Hester was denied due process of law when the trial judge refused to recuse herself after making prejudicial statements to the media;

7) Hester was denied due process of law when the trial court overruled his motion for a directed verdict as the prosecution presented insufficient evidence for a jury to convict him; and,

8) Hester's right to effective assistance of counsel was violated when his attorney failed to present an alibi defense and failed to contact, interview, and/or call witnesses to support his alibi defense.

[Record Nos. 1; 1-1]. As discussed below, the Court finds that the first four claims set out above have been procedurally defaulted.  Additionally, the Kentucky state court decisions regarding the remaining claims (claims five through eight) were not contrary to or an unreasonable application of federal law. Therefore, Hester's petition should be denied.

## II.  CLAIMS SUBJECT TO PROCEDERAL DEFAULT

The first four (4) claims stated above have been procedurally defaulted:  (1) that trial counsel was ineffective due to his failure to file a motion to sever his trial from his co-defendant; (2) that appellate counsel was ineffective; (3) that the trial court erred by allowing testimony that Hester had connections to drug activities;  and (4) that the trial court erred by allowing proof of the fact that at the time of the offense in this case, one of the victims in this case was pregnant. These claims are all procedurally defaulted as they were not properly presented to the state court, and there are no remaining state procedures for review.  In addition, because Hester has failed to show cause and prejudice, or evidence of actual innocence, he cannot overcome procedural default and the Court will not consider the merits of these claims.

4

a.  Exhaustion and Procedural Default Standards

In order to grant relief under 28 U.S.C. § 2254 to a person in state custody, a petitioner must have exhausted all available state court remedies unless "there is an absence of available state corrective process" or "circumstances exist that render such [state court] process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). In order to satisfy the exhaustion requirement, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). However, Kentucky Rule of Criminal Procedure 12.05 provides that "when the claim has been presented to the appellate court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies available for that claim," even if discretionary review was not sought in the Kentucky Supreme Court. Ky. R. Cr. P. 12.05. Therefore, a claim is deemed exhausted if the petitioner has been denied relief by the Kentucky Court of Appeals. Weinel v. Little Sandy Correctional Complex, Civ. No. 10-166-JBC-JGW, 2011 WL 4971117, at *1 n.2 (E.D.Ky. March 28, 2011), report and recommendation adopted by 2011 WL 4969317 (E.D.Ky. Oct. 18, 2011); Williams v. Eastern Ky. Correctional Complex, No. Civ. 09-388-KKC-CJS, 2011 WL 3475401, at *4 n.3, (E.D.Ky. Feb. 24, 2011), report and recommendation adopted by 2011 WL 3475087 (E.D.Ky. Aug. 9, 2011). However, claims raised by a § 2254 petition "may only be considered 'fairly presented' if the petitioner asserted both a factual and legal basis for his claims in state court." Newton v. Million, 349 F.3d 873, 877 (6th Cir. 2003); see also Fulcher v. Motley, 444 F.3d 791, 798 (6th Cir. 2006). This means that, in order for a claim to be considered exhausted, the petitioner must have posed the "the same claim under the same theory" to the state court. Wagner v. Smith, 581 F.3d 410, 418 (6th Cir. 2009). The Sixth Circuit has identified

four (4) factors significant to the determination of whether a federal claim has been fairly presented to the state court:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), *quoted in* Whiting v. Burt, 395 F.3d 602, 6013 (6th Cir. 2005). Further, a petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Consequently, even if a petitioner has failed to raise the claims presented in the § 2254 petition on direct review, if state post-conviction procedures exist that would allow the petitioner to present his claims in the state court, the claims are not fully exhausted and must be dismissed for failure to exhaust. Id.

If a petitioner has failed to present his claims to the state court at his opportunity to do so and is precluded by state procedural rules from now presenting the claims, they are deemed to be exhausted as no state remedy exists. Hannah v. Conley, 49 F.3d 1193, 1195-96 (6th Cir. 1995); Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994). However, such claims are subject to procedural default. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989). In order to reach the merits of a petitioner's claims, the claims must have been presented to the state court; otherwise, the claims are procedurally defaulted. Gray v. Netherland, 518 U.S. 152, 162 (1996); Teague, 489 U.S. at 297-98; William v. Anderson, 460 F.3d 789, 806 (6th Cir. 2006). Claims are considered procedurally defaulted if the petitioner did not raise the claims at his only opportunity to do so in the state court or when the facts supporting his claims were

known to the petitioner at an earlier date but the petitioner failed to raise the issue to the state court. <u>Teague</u>, 489 U.S. at 297-87; <u>William</u>, 460 F.3d at 806; <u>Scott v. Mitchell</u>, 250 F.3d 1011, 1013 (6th Cir. 2001).

A petitioner may overcome procedural default by showing actual innocence, or cause excusing his previous failure to raise the claim and prejudice resulting if review is withheld. <u>Reed v. Farley</u>, 512 U.S. 339, 354-55 (1994); <u>William</u>, 460 F.3d at 805-06. Further, "[h]abeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." <u>Lundgren v. Mitchell</u>, 440 F.3d 754, 764 (6th Cir. 2006). Cause requires a petitioner to show a substantial reason to excuse default and the failure to comply with the state procedural rule. <u>Franklin v. Anderson</u>, 434 F.3d 412, 417 (6th Cir. 2006). While ineffective assistance may be sufficient grounds for the failure to raise the claim below, such ineffectiveness is subject to the deferential <u>Strickland</u> test. <u>Coleman v. Thompson</u>, 501 U.S. 722, 753-54 (1991); <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986); <u>Howard v. Bouchard</u>, 405 F.3d 459, 478 (6th Cir. 2005). Further, the decision of counsel to forego a claim on appeal despite recognition of the claim as a potential ground for appeal is not sufficient cause to overcome procedural default. <u>Murray</u>, 477 U.S. at 486-87; <u>Jones v. Barnes</u>, 463 U.S. 745, 750-54 (1983); <u>United States v. Perry</u>, 908 F.2d 56, 59 (6th Cir. 1990). In order to meet the prejudice requirement, a petitioner must show that he was actually prejudiced by the claimed constitutional error. <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982); <u>Perkins v. LeCureux</u>, 58 F.3d 214, 219 (6th Cir. 1986). A petitioner must show, "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional

dimensions." <u>Frady</u>, 456 U.S. at 170.  If a petitioner shows both cause and prejudice, he will overcome procedural default and a habeas court will consider the merits of his claim.

In order to overcome procedural default based on a claim of actual innocence, the petitioner must show that review is necessary to prevent a fundamental miscarriage of justice. <u>Dretke v. Haley</u>. 541 U.S. 386, 3936 (2004); <u>Murray</u>, 447 U.S. 495-96. The petitioner must offer new evidence that was not presented at trial that produces a "fair probability" that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995). However, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of the barred claim." <u>Id.</u>, at 316. If a petitioner presents new evidence that sufficiently calls the jury's verdict into question, he will overcome procedural default, and a court will review the claim on the merits.

b.  Ineffective Assistance of Counsel for Failure to File a Motion to Sever

Hester claims that trial counsel was constitutionally ineffective for failing to file a motion to sever his trial from that of his co-defendant, Adrian Brown. [Record Nos. 1, at 14; 1-1, at 8-9]. Bottom responds that, while Hester did bring this argument in his state post-conviction motion, he failed to appeal the Circuit Court's denial of relief to the Kentucky Court of Appeals and, as a result, the claim is therefore not exhausted. [Record No. 14, at 28-29].

Hester asserted the instant claim before the state court in his Kentucky Rule of Criminal Procedure 11.42 motion for post-conviction relief. [Record No. 14-9, at 3-4]. The Circuit Court found that Hester was unable to show that he would have obtained a different outcome if his trial had been severed from Adrian Brown's trial. [Record No. 14-9, at 4]. Therefore, the Court ruled, Hester could not establish prejudice under <u>Strickland</u> due to counsel's

failure to move to sever Hester's trial. [Record No. 14-9, at 4].   Hester appealed the Circuit Court's denial of his motion to the Kentucky Court of Appeals, but made no mention of his attorney's failure to move to sever his trial and offered nothing to argue that the Circuit Court's holding was erroneous in that regard. [*See* Record No. 14-11, at 18-24]. Even a generous interpretation of his appeal could not be construed to fairly present to the Court of Appeals the issue of whether his counsel was ineffective for failing to move to sever his trial from his co-defendant. *See* Johnson v. Beckstrom, Civil Action No. 6:08-194-ART, 2011 WL 1808334, at *6 (E.D. Ky. May 12, 2011) ("It is not enough for the petitioner to simply mention the claim [to the state court] in an oblique manner or as a casual aside. . . . [T]he petitioner must present his claim in sufficient detail to afford the state courts 'the opportunity to see both factual and legal basis for [the] claim.'" (quoting Wagner v. Smith, 581 F.3d 410, 414-415 (6th Cir. 2009)) (third alteration in the original)). Further, this issue was not appealed following the denial of relief after the evidentiary hearing. [*See* Record Nos. 14-4; 14-7]. Therefore, Hester never fairly presented this claim to the state appellate court, and as there is no remaining state remedy for this claim of ineffective assistance of counsel for failure to move for severance, it is subject to procedural default.

Hester asserts as cause to excuse his failure to fairly present this issue, ineffective assistance of appellate counsel.  He contends that he asked appellate counsel to raise the issue. However, an attempt to establish cause by arguing appellate counsel's ineffectiveness should have been raised in the state courts before presenting the issue to a federal court.  Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000); Lancaster v. Adams, 324 F.3d 423, 437-38 (6th cir.2003); Ewing v. McMackin, 799 F.2d 1143, 1149-50 (6th Cir. 1986).  Hester's claim of cause to excuse his failure to fairly present the issue due to appellate counsel's failure to pursue the

claim will afford him no relief.  He offers nothing further as cause for his failure to present the issue of trial counsel's alleged ineffectiveness for failing to move for severance.  Additionally, he has not presented evidence of his innocence that was not previously available to the state courts. Finally, Hester fails to overcome procedural default by showing actual innocence.  He has not presented evidence of his innocence that was not previously available to the state courts. Further, the evidence presented does not manifestly demonstrate his innocence or sufficiently show a fundamental miscarriage of justice. *See, e.g.*, Dretke v. Haley, 541 U.S. 386, 393 (2004); Murray v. Carrier, 477 U.S. 478, 495-96 (1986); Deitz v. Money, 391 F.3d 804, 808 (6th Cir. 2004).  Hester has failed to overcome procedural default of his claim of ineffective assistance of counsel for failure to move to sever his trial from that of his co-defendant. Accordingly, Hester is not entitled to relief based on the foregoing claim.

c. Ineffective Assistance of Appellate Counsel

Hester asserts that he was denied his right to effective assistance of appellate counsel. Hester states that his appellate counsel should have challenged his trial counsel's failure to successfully move for a directed verdict of acquittal and failure to assert an alibi defense. [Record No. 1, at 18]. Bottom argues that the claim has been procedurally defaulted as Hester did not assert a claim for ineffective assistance of appellate counsel in his state post-conviction appeal. [Record No. 14, at 31]. In the alternative, Bottom asserts that it is meritless. [Record No. 14, at 31-32]. Hester, however, contends that because of the absence of an available state corrective process to address this claim in the Kentucky courts, he is in compliance with 28 U.S.C. 2254(b)(1)(B)(I), by now raising this claim.  For the reasons discussed below, the Court finds that the claim is subject to procedural default as Hester has not established cause to excuse his failure to present the claim to state court.

Prior to 2010, ineffective assistance of appellate counsel claims were not cognizable in the standard Kentucky post-conviction procedures. *See, e.g.*, Hollon v. Commonwealth, 334 S.W.3d 431 (Ky. 2010); Hicks v. Commonwealth, 825 S.W.2d 280 (Ky. 1992). Accordingly, when Hester filed his RULE 11.42 motion in 2008, a claim for ineffective assistance of appellate counsel would not be entertained by the court. However, in 2010, the Kentucky Supreme Court reversed its previous precedent, and recognized ineffective assistance of counsel claims "premised on appellate counsel's alleged failure to raise a particular issue on direct appeal." Hollon, 334 S.W.3d at 436. Therefore, while Hester's ineffective assistance of appellate counsel claim would not have been entertained by the Kentucky courts when Hester filed his RULE 11.42 motion, if filed now, his claim would be considered.

A case with a similar procedural history can be found in Johnson v. Beckstrom. Civil Action No. 6:08-194-ART, 2011 WL 1808334 (E.D. Ky. May 12, 2011). Like Hester, Johnson, the petitioner, presented his ineffective assistance of appellate counsel claims for the first time in a motion under 28 U.S.C. § 2254. Id., at *5-6. Johnson had previously filed for post-conviction relief in the Kentucky state court prior to Hollon and did not assert his claims for ineffective assistance of appellate counsel due to the state court's preclusion of such claims. Id. In its denial of Johnson's § 2254 motion, the court found that Johnson's claims for ineffective assistance of appellate counsel were still subject to procedural default. Id. In reaching its decision, the Court explained,

> [i]t is true that Kentucky courts have not been hospitable to ineffective-assistance-of-appellate-counsel claims in the past. Over the years, the Kentucky Supreme Court repeatedly said that "ineffective assistance of appellate counsel is not a cognizable issue in this jurisdiction." Parrish v. Commonwealth, 272 S.W.3d 161, 173 (Ky.2008); Lewis v. Commonwealth, 42 S.W.3d 605, 614 (Ky.2001). But this perceived hostility to his claims did not excuse Johnson from presenting them to the Kentucky courts. As the Supreme Court said in Engle v. Isaac, "[i]f a defendant perceives a constitutional claim and believes it may find favor in the

federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim." <u>456 U.S. 107, 130 (1982)</u>. After all, "[e]ven a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid." <u>Id.</u> Indeed, that is exactly what happened in the Kentucky courts with respect to ineffective-assistance-of-appellate-counsel claims. The Kentucky Supreme Court recently reversed course and recognized such a claim in <u>Hollon v. Commonwealth</u>, [334 S.W. 3d 431, 436] ( Ky. 2010) ("We are thus persuaded that it is time ... to recognize [ineffective-assistance-of-appellate-counsel] claims premised upon appellate counsel's alleged failure to raise a particular issue on direct appeal.").

<u>Hollon</u> illustrates perfectly the rationale underlying <u>Engle</u>'s requirement that a defendant must raise a claim in the state courts even if he believes the claim is likely to fail. State courts, like all courts, are fallible. <u>Cf.</u> <u>Brown v. Allen</u>, 344 U.S. 443, 540 (1953) (Jackson, J., concurring) ("[The Supreme Court is] not final because [it is] infallible, but [it is] infallible only because [it is] final."). Sometimes courts issue incorrect decisions. But state courts, like all courts, also have the ability to recognize error and change. Therefore, even if state courts have not been hospitable to a claim in the past, a defendant must still present the claim to them. If the rule were otherwise, once the state courts issue an incorrect decision, defendants could simply bypass them and hold their claims for federal habeas review, thereby robbing the state courts of the opportunity to correct their mistake. Such a regime would permit "the type of deliberate bypass condemned in <u>Fay v. Noia</u>, 372 U.S. 391 (1963)." <u>Engle</u>, 456 U.S. at 130 n. 35.

Accordingly, because Johnson did not present his ineffective-assistance-of-appellate-counsel claims to the Kentucky courts and his only opportunities for doing so have long since passed, they are procedurally defaulted. <u>See</u> <u>Williams[ v. Anderson]</u>, 460 F.3d [789,] 806 [(6th Cir. 2006).

<u>Johnson v. Beckstrom</u>, Civil Action No. 6:08-194-ART, 2011 WL 1808334, at *5-6 (E.D. Ky.

May 12, 2011) (second, third, fourth, fifth, sixth, seventh, and eighth alterations in the original).

Like Johnson, Hester should have presented his ineffective assistance of appellate

counsel claim to the Kentucky state court in his RULE 11.42 motion. While the Kentucky court

had been hostile to such claims before, it does not excuse Hester's failure to present the claim to

the state court. Had Hester not bypassed state court review of the claim,

his case could have been the one in which they changed their minds. But [Hester] never gave the Kentucky courts that opportunity. Ultimately, [Hester]'s argument amounts to no more than that his claims were "unacceptable to that particular court at that particular time"—an argument the Court expressly rejected in <u>Engle</u>,

456 U.S. at 130 n. 35 (quoting <u>Myers v. Washington</u>, 646 F.2d 355, 364 (9th Cir.1981) (Poole, J., dissenting)).

<u>Johnson v. Beckstrom</u>, Civil Action No. 6:08-194-ART, 2011 WL 3439135, at *1 (E.D. Ky. Aug. 5, 2011). Therefore, Hester's claims of ineffective assistance of appellate counsel are subject to procedural default.

As discussed previously, Hester has not presented evidence of his innocence to overcome procedural default. *Supra* § II.b., at 10. Therefore, his ineffective assistance of appellate counsel claim is procedurally defaulted and Hester is not entitled to relief.[1]

 d. DENIAL OF DUE PROCESS BY THE TRIAL COURT'S FAILURE TO EXCLUDE TESTIMONY CONCERNING ALLEGED DRUG ACTIVITIES AND FAILURE TO LIMIT THE SCOPE OF TESTIMONY REGARDING THE VICTIM'S PREGNANCY

Wanda Hughes, a witness, testified that she knew Hester because he was a drug dealer from whom she had previously bought drugs. [Record No. 14-13, at 16-17]. Further, Hughes testified that "there was drug use on the night of the home invasion." [Record No. 14-13, at 17]. This evidence was admitted at trial over Hester's objection under KENTUCKY RULE OF EVIDENCE 404(b) as character evidence of a prior bad act that tended to show identity. [*See* Record No. 14-13, at 18]. Likewise, there was testimony by the victim, who testified that she,

---

[1] The Court would also like to note that Hester fails to meet the <u>Strickland</u> standard of ineffective assistance of appellate counsel required for relief. First, Hester's appellate counsel brought a claim for the denial of the directed verdict based on sufficiency of the evidence on direct appeal. As the Kentucky Supreme Court considered and rejected this claim, [Record No. 14-13, at 13-19; *see also, infra* § III.d.], his appellate counsel cannot be considered to have acted deficiently in not bringing essentially the same claim under the guise of ineffective assistance of counsel. Further, considering the much more stringent standard of review for ineffective assistance of counsel claims, Hester cannot establish prejudice resulted from the failure to raise this claim on direct review. Second, Hester himself raised a claim of ineffective assistance of counsel based on his attorney's failure to present an alibi defense in his RULE 11.42 motion. The Circuit Court and Kentucky Court of Appeals both considered it and ultimately found that counsel's performance was not an unreasonable tactical decision; nor can the Court conclude that counsel's performance was deficient or deficient. [*See* Record Nos. 14-4, at 4-5; 14-8, at 4-5; *see also, infra* § III.e.]. Accordingly, Hester cannot establish prejudice resulting from his appellate counsel's decision not to bring this claim on direct review. Additionally, Hester does not establish that his counsel's failure to assert this claim was an unreasonable tactical decision; nor can the Court conclude that counsel's performance was deficient for failing to present this claim on direct appeal. *See* <u>Jones v. Barnes</u>, 463 U.S. 745, 750-54 (1983) (there is no constitutional right to have every nonfrivolous issued raised on appeal); <u>United States v. Perry</u>, 908 F.2d 56, 59 (6th Cir. 1990) (tactical choices regarding issues on appeal are properly left to the sound professional judgment of counsel). Therefore, Hester would not be entitled to relief even if the Court considered his claim on the merits.

was due to give birth the day after the home invasion occurred. During the course of the crime, [the victim] was pushed to the ground, and, in an effort to avoid injuring the fetus, landed on her arm, breaking the bone and dislocating her elbow, which required surgery. Her pregnancy was not adversely affected, and she gave birth two days after the home invasion to a healthy baby.

[Record No. 14-13, at 19].

The trial court found that this evidence was relevant and, under Kentucky Rule of Evidence 403, its probative value was not substantially outweighed by any potential prejudice. [*See* Record No. 14-13, at 19-20]. Hester contends that the Kentucky Supreme Court erred in concluding that the trial court's failure to exclude Wanda Hughes' testimony concerning an alleged drug connection between herself and Hester did not violate his right of due process. [Record Nos. 1, at 11; 1-1, at 7]. Hester further asserts that the Kentucky Supreme Court's conclusion that his due process rights were not violated by the trial court's failure to limit the scope of the testimony concerning the victim's pregnancy was erroneous. [Record No. 1, at 13].

Bottom responds that Hester failed to fairly present these issues to the state court as violations of federal law. [Record No. 14, 22-24, 27]. Therefore, according to Bottom, these issues have not been exhausted and, as no avenue remains for Hester to pursue these claims, they have been procedurally defaulted. [Record No. 14, 22-24, 27]. The state court record clearly shows that Hester did not fairly present these two (2) issues to the state court as violations of Hester's federal rights and, as a result, they are procedurally defaulted.

In order for a claim to be considered fairly presented to the state court for the purpose of exhaustion and procedural default, a petitioner must have presented the claim grounded in or alleging a violation of federal law to the state court. In determining whether a claim has been fairly presented as a federal claim to the state court, a court looks at the nature and substance of the claims presented to the state court. In particular, the petitioner must have relied on federal

constitutional case law, relied on state case law analyzing the federal constitutional case law, phrased his claim in federal constitutional terms, used language sufficiently specific to assert a claim of a violation of a specific constitutional right, and/or alleged facts plainly indicative of a constitutional violation.  McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), Whiting v. Burt, 395 F.3d 602, 613 (6th Cir. 2005).

In his state direct appeal of these claims, Hester relied solely on the KENTUCKY RULES OF EVIDENCE and Kentucky case law interpreting the state rule of evidence. [See Record No. 14-16, at 35-39]. However, Hester did not rely on any federal case law and the Kentucky cases to which he cited do not employ any relevant analysis of the federal constitution. [See Record No. 14-16, at 35-39 and the cases cited therein]. While the last sentence of each argument does cite to federal constitutional provisions, this is not sufficient to consider Hester to have fairly presented these claims as violations of federal law to the state court. "General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated." McMeans, 228 F.3d at 681 (citation omitted); see also Fulcher v. Motley, 444 F.3d 791, 798 (6th Cir. 2006); Newton v. Million, 349 F.3d 873, 877 (6th Cir. 2003). Here, a mere passing reference to the federal constitution equates to no more than a general allegation that his right to a fair trial and due process rights were violated. Lastly, exclusion of evidence under KENTUCKY RULES OF EVIDENCE 403 and 404(b), or their federal counterparts, is not an inherently constitutional issue. Unlike the obvious confrontation clause issues raised by the admission of hearsay, there is no obvious and/or specific constitutional right implicated by the character and relevancy rules. Accordingly, the factual basis associated with the allegation of such violations does not involve facts "well within the mainstream of constitutional law." Whiting v. Burt, 395 F.3d 602, 613 (6th Cir. 2005). Further, the facts supporting Hester's claims

regarding the testimony of the victim's pregnancy and his connection to drug activity are not similar to typical and conventional factual allegations of constitutional claims. Therefore, the state court record indicates that Hester failed to fairly present these claims as violations of federal constitutional law to the Kentucky courts. Consequently, these claims have not been exhausted. As there is no longer an appellate procedure available for Hester to assert these claims in Kentucky, the claims are subject to procedural default.

Hester has also failed to meet the burden of showing actual innocence to overcome procedural default. *Supra* § II.b., at 10. Hester also fails to establish cause for failure to raise these claims to the state court. His allegation that any failure to preserve the claim was the fault of his counsel is unavailing. Hester fails to meet the Strickland standard of ineffective assistance of counsel required to show cause based on his attorney's performance. He does not present evidence that the failure to bring these claims on federal grounds was deficient or unreasonable conduct. [*See* Record No. 18, at 25-26]. Nor can the Court conclude that counsel's performance was deficient for failing to do so, as the tactical choice to bring the claim under the KENTUCKY RULES OF EVIDENCE was reasonable considering the clear lack of a constitutional basis. *See* Jones v. Barnes, 463 U.S. 745, 750-54 (1983) (there is no constitutional right to have every nonfrivolous issued raised on appeal); United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990) (tactical choices regarding issues on appeal are properly left to the sound professional judgment of counsel). Moreover, Hester cannot show that the failure to consider these claims resulted in prejudice. A review of the Kentucky Supreme Court opinion and Hester's brief lead to a clear conclusion that Hester's claim does not present a constitutional issue. His sweeping claims of a due process violation are not sufficient to meet his burden of showing prejudice. *See* Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir. 2006) ("Habeas petitioners *cannot rely on conclusory*

16

*assertions* of cause and prejudice to overcome procedural default; they must present *affirmative evidence or argument as to the precise* cause and prejudice produced." (emphasis added)). Therefore, Hester has failed to overcome procedural default of his claims of violation of due process due to the scope of Ms. Hughes and the victim's testimony. Accordingly, relief should be denied on these claims.

### III. WHETHER THE KENTUCKY STATE DECISIONS WERE CONTRARY TO OR UNREASONABLY APPLIED FEDERAL LAW

Four (4) of Hester's claims were presented to and exhausted in the state court on direct appeal or in his Rule 11.42 motion and are properly before this court. These claims involve: (1) the trial court's limitation of Arian Brown's cross-examination; (2) the trial judge's refusal to recuse; (3) the trial court's denial of his motion for a directed verdict based on insufficient evidence; and, (4) ineffective assistance of counsel due to his attorney's failure to investigate or present an alibi defense. The Court will review these claims to determine if the state court's rulings were contrary to or an unreasonable application of federal law as established by Supreme Court precedent.  For the reasons discussed below, the Court finds that Hester is not entitled to relief based on these claims, and therefore recommends that Hester's petition be denied.

a. Contrary to or Unreasonable Application Standard

Hester's claims are governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"), in 28 U.S.C. § 2254. Pursuant to AEDPA, a petition by a person in state custody for a writ of habeas corpus under § 2254 shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d). Thus, a federal court may grant a writ of habeas corpus based on a determination of law rendered by a state court only under the "contrary to" or "unreasonable application" clauses. A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 405-06 (2000); *see also* White v. Mitchell, 431 F.3d 517, 523 (6th Cir. 2005); Jones v. Jamrog, 414 F.3d 585, 591 (6th Cir. 2005). The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." Williams, 529 U.S. at 405.

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decision, but unreasonably applies that principle to the facts. Id., at 407-08.  Significantly, relief is not available if the state court merely applied clearly established federal law erroneously or incorrectly. Id., at 411. The application must be "objectively unreasonable." Id., at 407; Lordi v. Ishee, 384 F.3d 189, 195 (6th Cir. 2004).  Relief is also available under the clause if the state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. William, 529 U.S. at 407; Arnett v. Jackson, 393 F.3d 681, 686 (6th Cir. 2004). "The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them." Slagle v. Bagley, 457 F.3d 501, 513 (6th Cir. 2006) (*citing* Early v. Packer, 537 U.S. 3, 8 (2002) (*per curiam*)); *see also* Stewart v. Erwin, 503 F.3d 488, 493 (6th 2007). "Instead, it is sufficient that the result and reasoning are

18

consistent with Supreme Court precedent." <u>Slagle</u>, 457 F.3d at 514; *see also* <u>Stewart</u>, 503 F.3d at 493.

Ultimately, AEDPA imposes a "highly deferential standard for evaluating state-court rulings," <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7 (1997), which effectively "demands that state-court decisions be given the benefit of the doubt." <u>Woodford v. Viscotti</u>, 537 U.S. 19, 24 (2002). It is not the role of the reviewing court "to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991). Rather, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Id.</u> All factual findings made by a state court are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); <u>Post v. Bradshaw</u>, 621 F.3d 406, 413 (6th Cir. 2010).

  b. Denial of Due Process by the Trial Court's Limitation of the Scope of the Cross-Examination of Arian Brown

Hester alleges that his rights of due process of law and confrontation were violated by the trial court's limitation of the scope of Arian Brown's testimony. [Record No. 1-1, at 5]. Specifically, Hester asserts that since Arian Brown could not be cross-examined regarding the portion of his plea agreement related to the Seventh Street robbery (for which his co-defendant, Adrian Brown, was indicted), Hester could not fully develop Arian Brown's testimony regarding his bias and therefore could not effectively impeach his testimony. [Record No. 1-1, at 5]. Bottom responds that the Hester "fails to identify how the Kentucky Supreme Court's decision affirming the trial court's ruling [limiting Arian Brown's testimony] was contrary to or was the result of an unreasonable application of federal law as determined by the United States Supreme Court." [Record No. 14, at 15]. The Court finds that the Kentucky Supreme Court's determination that the limitation of Arian Brown's testimony did not violate Hester's

constitutional rights was not contrary to or an unreasonable application of federal law, and therefore, this claim does not provide Hester with relief.

As discussed earlier, a claim raised in a § 2254 petition that was previously presented to the state court only entitles a petitioner to relief if the state court decision was contrary to or an unreasonable application of clear Supreme Court precedent. On his direct appeal, Hester asserted a claim concerning the limitation of Arian Brown's testimony. In affirming Hester's conviction, the Kentucky Supreme Court addressed this claim, stating in relevant part,

> As the Commonwealth concedes, the credibility of a witness may always be questioned. KRE 607 provides: "The credibility of a witness may be attacked by any party, including the party calling the witness." Proof that a witness has made a deal with the prosecution may show that the witness has a motivation to testify favorably for the Commonwealth. As Professor Lawson has explained, "[t]he plea bargaining strategies of prosecutors and other characteristics of the criminal law and its processes encourage participants in crime to trade testimony for favored treatment." Robert G. Lawson, The Kentucky Evidence Law Handbook § 4.10[2], at 279-80 (4th ed. 2003). Thus, such evidence can constitute a powerful attack on the credibility of a witness.

> Appellant also notes correctly that limitations on the admissibility of evidence of bias have constitutional implications under the Confrontation Clause. *See* Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431 (1986); Davis v. Alaska, 415 U.S. 308, 318, 94 S. Ct. 1005, 1111 (1974); Commonwealth v. Cox, 837 S.W.2d 898 (Ky. 1992). Those cases recognize that the Confrontation Clause is violated when there is a complete bar on cross-examination as to a witness's bias. This case is distinguishable, however, because Appellant was allowed to explore Arian Brown's bias, albeit in a limited fashion.

> But the right to explore witness bias is not unlimited, even when considered in the context of the Confrontation Clause. See Robert G. Lawson, The Kentucky Evidence Law Handbook § 4.10[4], at 283-84 (4th ed. 2003) ("Needless to say, Davis and Van Arsdall do not give defendants an unfettered right to cross-examine witnesses about possible bias, interest, or corruption."). The admissibility of such evidence is subject to the discretion of the trial judge. Commonwealth v. Maddox, 955 S.W.2d 718, 721 (Ky. 1997). Thus we have noted: "'Defendants cannot run rough-shod, doing precisely as they please, simply because cross-examination is underway. So long as a reasonably complete picture of the witness's veracity, bias and motivation is developed, the judge enjoys power and discretion to set appropriate boundaries.'" Id. (quoting United States v. Boylan, 898 F.2d 230, 254 (1st Cir.1990)).

The trial court, in ruling that cross-examination of Brown could not include questions regarding the portion of his plea bargain related to the Seventh Street crime, engaged in the prejudice-probativeness balancing required by KRE 403 and determined that limiting the scope of cross-examination was necessary to avoid potential prejudice. The trial court noted two reasons for disallowing this testimony: it did not want to prejudice the defendants in this proceeding who were not involved in the Seventh Street crime by linking the two crimes to one another, and it was also trying to avoid prejudice to Adrian Brown, who was involved in the Seventh Street crime.

Despite the limitations imposed by the trial court, the jury heard Arian Brown testify that he had entered into a plea agreement with the Commonwealth for his role in the Manhattan Drive crime, that the agreement provided for a significantly reduced penalty, and that he would enjoy 20% parole eligibility because the crime to which he pled guilty was not considered a violent crime. This evidence presented a reasonably complete picture of Arian Brown's possible bias and motivation to testify favorably for the Commonwealth. This is sufficient to satisfy Appellant's right of confrontation and bring the trial court's decision to limit the testimony squarely within the realm of allowed discretion. Maddox, 955 S.W.2d at 721. As such, the limitation, in light of the circumstances, was not an abuse of the trial court's discretion.

[Record No. 14-13, at 7-9].

To determine if the Kentucky Supreme Court's opinion is contrary to or an unreasonable application of federal law, the relevant Supreme Court constitutional standard is enlightening. A defendant has the right to cross-examine witnesses against him and "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross examination." Davis v. Alaska, 415 U.S. 308, 316-17 (1974). Notwithstanding the foregoing,

trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (per curiam) (emphasis in original).

21

Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

It is clear that the Kentucky Supreme Court identified and applied the correct standard to determine whether Hester's confrontation and due process rights were violated under federal law. [Record No. 14-13, at 8]. Additionally, the opinion reasonably applied the facts to the law. As the Kentucky Supreme Court explained, Hester had a constitutional right to cross-examine Arian Brown regarding his plea deal under the Constitution and Supreme Court precedent, as it was relevant to his bias and motivation to testify, but this right was not unlimited. [Record No. 14-13, at 8]. The opinion determines that the trial court's limitation was an acceptable limitation on this right in order to avoid prejudice to Hester and his co-defendant. [Record No. 14-13, at 9]. The Kentucky Supreme Court ruling reasonably found that this limitation did not violate Hester's constitutional rights under the boundaries announced by the Supreme Court. This finding was reasonable considering the limitation imposed and consistent with federal law in sufficiently allowing the jury to be informed of the relevant facts concerning Arian Brown's bias and motivation to testify. *See* Stewart v. Wolfenbarger, 468 F.3d 338, 347 (6th Cir. 2006) ("Where the trial court limits the extent of cross-examination, the inquiry for the reviewing court is 'whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.'" (quoting Dorsey v. Parke, 872 F.2d 163, 167 (6th Cir. 1989))).

In his reply, Hester cites to several cases from the Sixth Circuit to support his claim that the Kentucky Supreme Court ruling was contrary to law. [Record No. 18, at 15-17]. The three (3) cases Hester relies on, Brown v. Palmer, Fuller v. Anderson, and Hopson v. Foltz, decide sufficiency of the evidence issues, with no confrontation clause or scope of testimony issues presented. Brown v. Palmer, 441 F.3d 347 (6th Cir. 2006); Fuller v. Anderson, 662 F.2d 420 (6th

Cir. 1981); Hopson v. Foltz, No. 86-1155, 818 F.2d 866 (table decision), 1987 WL 37432 (6th Cir. May 20, 1987).  None of these cases are relevant to Hester's claim regarding the limitation of Arian Brown's cross examination and do not bear on whether the Kentucky Supreme Court's holding was contrary to or an unreasonable application of federal law. Considering the relevant facts and controlling law, it is clear that the Kentucky Supreme Court's holding that Hester's constitutional rights were not violated by the limitation of Arian Brown's testimony was reasonable in its application of and consistent with federal law. Accordingly, Hester is not entitled to relief on this ground.

       c.   DENIAL OF DUE PROCESS BY THE TRIAL JUDGE'S REFUSAL TO RECUSE

Hester asserts that the trial judge's refusal to recuse after making prejudicial statements to the media resulted in a violation of his right to due process of law. [Record No. 1, at 8]. Bottom responds that, in light of the context and circumstances of the trial judge's comments, Hester fails to and cannot demonstrate that the Kentucky Supreme Court ruled contrary to or unreasonably applied federal law. [Record No. 14, at 15-19]. The Court concludes that the Kentucky Supreme Court's holding that the trial judge's decision not to recuse was not contrary to or an unreasonable application of federal law. Therefore, this claim does not entitle Hester to relief in this matter.

The Kentucky Supreme Court's decision affirming Hester's conviction on direct appeal provides the following analysis of Hester's claim that the trial judge should have recused:

> Teddy Hawkins was originally scheduled to be tried with Appellant, Rice, and Adrian Brown. Prior to trial, the trial court issued a funeral pass to Hawkins so that he could attend his father's funeral in Detroit, Michigan. Hawkins did not return. The incident was publicized on television and in the Lexington Herald-Leader, the local newspaper. The trial court made the following statement on the Channel Eighteen news during the six o'clock broadcast on July 9, 2004: "It's my policy that if both sides agree I will recuse myself from this case. But I believe that I would be much more harsh than anyone else could at this point."

Appellant subsequently moved the trial court to recuse from the case pursuant to KRS 26A.01 5(2)(a) and (e) and SCR 4.300, the Judicial Code of Conduct. At a hearing on the motion, Adrian Brown, one of Appellant's co-defendants, and the Commonwealth joined the motion.

The trial court overruled the motion, noting that its comments on the evening news were taken out of context. Specifically, the court stated:

> This Court's comments dealt specifically with Teddy Hawkins and how this Court would deal with Teddy Hawkins' defiance of this Court's Order by way of contempt, not at his trial. Furthermore, the comments in no way related to the other four defendants in this case. They were not being discussed.

The court also noted that the case would be delayed if she were replaced, and that the other defendants would be prejudiced by evidence of Hawkins's escape:

> The trial scheduled in this matter for July 26th, should go forward. All parties involved in this case need closure in the foreseeable future. Recusal in this case would only delay the trial for several months, if not a year, given the number of parties involved. It would be unduly prejudicial to Defendants Brown, Rice, Hester and Hughes to be tried along with Teddy Hawkins because evidence of Hawkins' escape would be relevant only as to Hawkins. Such evidence would be prejudicial against the other defendants.

Thus, instead of recusing, the trial court, by its own motion, ordered Hawkins's trial severed from that of his co-defendants.

Appellant now contends that the trial court's statement to the media concerning the escape of Teddy Hawkins, one of Appellant's co-defendants, shows it lacked impartiality. He also claims that statements made in the press by Manley, one of the victims, criticizing the trial court for releasing Hawkins were likely to further influence the trial court. As a result, Appellant argues, his constitutional right to an impartial tribunal was violated.

The Supreme Court has held that the right to an impartial judge is an element of due process. *See* Johnson v. Mississippi, 403 U.S. 212, 215-216, 91 S.Ct. 1778, 1780 (1971). As the Supreme Court has noted:

> [M]ost questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard. Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar. But the floor established by the Due Process Clause clearly requires a fair trial in a fair

tribunal, before a judge with no actual bias against the defendant or
interest in the outcome of his particular case.

Bracy v. Gramley, 520 U.S. 899, 904-05, 117 S.Ct. 1793, 1797 (1997) (internal
citations and quotation marks omitted).

Kentucky employs two methods of protecting this interest: one based on statute
and one based on this Court's rules. KRS 26A.015(2) requires judges to recuse
from cases in certain circumstances. The portions of the statute on which
Appellant relies states:

> Any justice or judge of the Court of Justice or master commissioner shall
> disqualify himself in any proceeding:
>     (a) Where he has a personal bias or prejudice concerning a party, or
> personal knowledge of disputed evidentiary facts concerning the
> proceedings, or has expressed an opinion concerning the merits of the
> proceeding;
>     (e) Where he has knowledge of any other circumstances in which his
> impartiality might reasonably be questioned.

KRS § 26A.015. Judicial Code of Conduct Canon 3(E)(1) similarly provides: "A
judge shall disqualify himself or herself in a proceeding in which the judge's
impartiality might reasonably be questioned . . . ." We have previously articulated
the high burden of proof for a recusal motion:

> The burden of proof required for recusal of a trial judge is an onerous one.
> There must be a showing of facts of a character calculated seriously to
> impair the judge's impartiality and sway his judgment. The mere belief
> that the judge will not afford a fair and impartial trial is not sufficient
> grounds for recusal.

Stopher v. Commonwealth, 57 S.W.3d 787, 794 (Ky. 2001) (internal citation and
quotation marks omitted); see also Webb v. Commonwealth, 904 S.W.2d 226,
229-30 (Ky. 1995) ("A party's mere belief that the judge will not afford a fair and
impartial trial is not sufficient grounds to require recusal.").

Appellant's argument amounts to the dual claim that recusal was required because
the Commonwealth agreed that recusal was called for and because the court made
comments about the case in the media. The mere fact that the Commonwealth
joined the recusal motion is not enough. Such a standard would be unworkable
since it would allow judges who are unpopular on both sides of the bar,
prosecution and defense, to be removed without any showing of impartiality.

Instead, we must evaluate whether Appellant has shown that the trial court in this
case would be biased. The trial judge's statement to the media, while perhaps not
ideal, was not enough to require recusal. As the trial court explained in its order,

25

the statement in question was made in reference to Hawkins's contempt proceeding. It was not made in reference to the merits of Appellant's proceeding and was being taken out of context. Appellant contends the impartiality evidenced by comment was not limited to Hawkins, but "could be directed at the defendants- [the trial court] might want to ensure a conviction-or towards the Commonwealth since one of the victims made such critical statements about her." Such a contention, however, is merely speculative and therefore is insufficient to warrant recusal. Moreover, by severing Hawkins's trial from Appellant's, the trial court removed the possibility of taint from any impartiality directed toward Hawkins due to his escape. We conclude that the trial court's decision not to recuse in this matter was not error.

[Record No. 14-13, at 9-13].

The Kentucky Supreme Court's holding correctly identified and applied federal law. As the Kentucky Supreme Court stated, questions of judicial bias rarely give rise to a constitutional issue. In order to show a violation of due process, a defendant must show *actual* bias or interest in the outcome of the case. Bracy v. Gramley, 520 U.S. 899, 904-05 (1997); Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 821-22 (1986); Tumey v. Ohio, 273 U.S. 510, 523 (1927). Here, the Kentucky Supreme Court articulated the correct federal standard, but, in accordance with Supreme Court precedent, applied the more stringent standard under Kentucky law. [Record No. 14-13, at 11-13]. The finding that the trial judge was not required to recuse was reasonable in light of the facts. Further, the Kentucky Supreme Court's conclusion did not violate the federal standard, as the evidence does not sufficiently show that the trial judge had an actual bias or interest in the outcome of Hester's case.

Hester asserts that the Kentucky Supreme Court's ruling is erroneous under Irwin v. Dowd, 366 U.S. 717 (1960). His reliance on this case is misguided. In Irwin, the Supreme Court was presented with a question concerning a jury and the media's influence on individual jurors. Id. Further, eight (8) of the twelve (12) jurors explicitly expressed during *voir dire* that they believed the defendant to be guilty. Id., at 727. This case is inapposite to Hester's claim. First,

26

the concerns of the media's influence on judges are not the same or as great as the concerns associated with jurors. Judicial exposure to press does not inherently call into question their partiality or fairness, nor could it as it would effectively prohibit the entire judiciary from watching their local news or reading their local newspaper. Second, the trial judge's statement cannot be construed to be a comment on Hester's guilt. While in <u>Irwin</u>, the jurors explicitly stated that they believed the defendant to be guilty, in the instan  situation, the trial judge's statement expresses no opinion as to guilt on the actual charges. Further, the context clearly indicates that the statement was relevant only to Hester's co-defendant, whose trial was severed, and germane only to charges or punishment related to his violation of the court's order. Hester's attempt to stretch the trial judge's statements to be applicable to him is unpersuasive. It is clear that the Kentucky Supreme Court's decision was not contrary to or an unreasonable application of federal law. Hester is therefore not entitled to relief based on his claim regarding the trial judge's refusal to recuse.

> d. DENIAL OF DUE PROCESS BY THE TRIAL COURT'S DENIAL OF HESTER'S MOTION FOR A DIRECTED VERDICT DUE TO INSUFFICIENT EVIDENCE

Hester asserts that the denial of his motion for a directed verdict of acquittal was a violation of his right of due process of law because there was insufficient evidence presented for a jury to find him guilty. [Record Nos. 1, at 9; 1-1, at 6]. In support, Hester claims that all the evidence presented was circumstantial and based on the testimony of witnesses who were not credible. [Record No. 1, at 9]. In response, Bottom asserts that the Kentucky Supreme Court's affirmation of his conviction on direct appeal was consistent with and reasonably applied federal law in reviewing a sufficiency of the evidence claim. [Record No. 14, at 20-22]. As discussed below, the Kentucky Supreme Court opinion demonstrates a reasonable analysis consistent with federal law and therefore, Hester is not entitled to relief based on this claim.

After summarizing the evidence presented at trial by the prosecution, the Kentucky

Supreme Court provided the following analysis of Hester's sufficiency of the evidence claim:

> "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then is the defendant entitled to a directed verdict of acquittal." Commonwealth v. Benham, 816 S.W.2d 186, 187 (Ky.1991). In applying this test, we are required to consider all of the evidence in the light most favorable to the prosecution, Stopher v. Commonwealth, 57 S.W.3d 787, 802 (Ky.2001). Moreover, all questions as to credibility are left to the jury. Benham, 816 S.W.2d at 187.
>
> This case presents a situation similar to that of our recent case, Potts v. Commonwealth, 172 S.W.3d 345, 349 (Ky.2005). In Potts, the appellant argued that because Commonwealth's main witness "suffered from bipolar disorder, admitted to drug use, and had a motive to fabricate her accounts of Appellant's drug transactions, her testimony was so lacking in credibility that it rendered the evidence 'qualitatively insufficient' to support his convictions." Id. at 347. In that case we reiterated our standard of review for directed verdicts and concluded that in those few cases where we have held directed verdicts to have been erroneously denied—cases upon which Appellant now relies—"the reversals occurred not because the witnesses, themselves, lacked credibility, but because their testimony asserted the occurrence of physically impossible or inconceivable events." Id. at 349. We need not reiterate the entirety of the Potts analysis as applied to Appellant's present claims. It suffices to say that, as was the case in Potts, we are not presented with a situation where the events described in the witnesses' testimony were simply impossible or inconceivable.
>
> Under the Benham standard, it is enough to note that the contradictions in the witnesses' testimony were brought to light at trial and presented to the jury for their consideration. Similarly, the jury heard the evidence of the witnesses' possible bias and lack of credibility—namely, testimony about their plea bargains and their felony convictions. Despite the minor contradictions in the testimonies of the four witnesses and the fact that they may have been motivated to give favorable testimony for the Commonwealth because of plea bargains or pending charges, we are unconvinced that the trial court erred by failing to direct the verdict in Appellant's favor.

[Record No. 14-13, at 15-16].

The Benham standard used by the Kentucky Supreme Court is virtually identical to the

federal standard announced by the Supreme Court in Jackson v. Virginia. 443 U.S. 307 (1979).

In Jackson, the Court articulated that, for a sufficiency of the evidence claim, the

this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Woodby v. INS, 385 U.S. [276,] 282 [(1966)]. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Id., at 318-19. The standard used by the Kentucky Supreme Court as announced in Benham is consistent with the federal standard of Jackson. Both ultimately require a court to view the evidence in a light most favorable to the prosecution to determine if a reasonable jury could find the defendant guilty of the crime charged beyond a reasonable doubt without substituting its judgment for that of the jury. The Kentucky Supreme Court reasonably analyzed the evidence presented against Hester and, in light of the applicable standard, sensibly concluded that the trial court did not err in overruling Hester's motion for a directed verdict. As there was substantial circumstantial evidence of Hester's guilt, the Kentucky Supreme Court's holding was consistent with federal law and was a reasonable application of the facts to the law.

Hester's argument relies mainly on the circumstantial nature of the evidence and the credibility of the witnesses. [Record No. 18, at 21-23]. Notably, the three (3) Sixth Circuit cases Hester relies on, Brown v. Palmer, Fuller v. Anderson, and Hopson v. Foltz, all involve convictions of aiding and abetting, where the defendant was present on the scene but there was no evidence, besides his presence, to indicate the defendant intended to aid in commission of the crime or even knew that the crime was taking place. Brown v. Palmer, 441 F.3d 347 (6th Cir. 2006); Fuller v. Anderson, 662 F.2d 420 (6th Cir. 1981); Hopson v. Foltz, No. 86-1155, 818 F.2d 866 (table decision), 1987 WL 37432 (6th Cir. May 20, 1987).  Contrary to the Brown, Fuller, and Hopson, Hester was not charged with aiding and abetting and there was testimony and evidence not only placing Hester at the scene, but establishing that he participated in the robbery and burglary. [*See* Record No. 14-13, at 14 (Arian Brown testified that Hester "had a .38 caliber

gun and that [Hester] was the one who took [the victim's] purse")]. Conversely, in the cases to which Hester cites, there was *no* testimony as to the defendants' actual participation or involvement in the crime, beyond their presence. Brown, 441 F.3d at 352 (noting "the absence of facts demonstrating that Brown in fact provided assistance of encouragement to the perpetrator" in concluding that "being present at the scene of the crime and having a brief relationship with the [principal] are insufficient facts to establish" that a defendant aided and abetted beyond a reasonable doubt); Fuller, 662 F.2d at 424 (concluding that there was no evidence that the defendant "took conscious action" to aid the principal in committing arson); Hopson, 1987 WL 37432, at *1 ("No proof was given that Hopson acted in pre-concert with [the principal] to commit the murder or that he said or did anything to 'support, encourage, or incite the commission of the crime.'" (citation omitted)). While the credibility of the prosecution's witnesses may have been questionable, there was testimony and sufficient evidence of Hester's participation to allow a reasonable jury to find Hester guilty.

Additionally, Hester appears challenge the factual characterizations and findings of the state courts. However, Hester fails to present any clear and convincing evidence required to rebut the presumption that the Kentucky Supreme Court's factual findings are correct. *See* 28 U.S.C. § 2254(e)(1); Post v. Bradshaw, 621 F.3d 406, 413 (6th Cir. 2010). Further, the standard of review for sufficiency of the evidence is designed to impinge on the province of the jury "only to the extent necessary to guarantee the fundamental protection of due process of law in Jackson v. Virginia, 443 U.S. 307, 319 (1979) (footnote omitted). This requires a court reviewing a jury verdict not to substitute its assessment of the evidence for that of the jury. Ultimately, such a standard requires that a court not replace the jury's credibility judgments with its own. A significant portion of Hester's argument relies on the credibility of the witnesses, which cannot

be questioned by this Court without impinging the discretion of the jury. The Kentucky Supreme Court's holding affirming the denial of Hester's motion for a directed verdict was not contrary to or an unreasonable application of federal law.

e. INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO HESTER'S ATTORNEY'S FAILURE TO INVESTIGATE AND PRESENT AN ALIBI DEFENSE

Hester claims that his right to effective assistance of counsel was violated by his attorney's failure to present an alibi defense at trial and investigate Hester's alibi or interview witnesses to support his alibi. [Record No. 1-1, at 10]. Bottom contends that the Kentucky Court of Appeals' affirmance of the Circuit Court's denial of this claim correctly identified and reasonably applied federal law. [Record No. 14, at 29-31]. The Court concludes that the Kentucky courts' denial of Hester's claim was not contrary to or an unreasonable application of federal law and Hester is not entitled to relief.

After the Circuit Court's original denial of Hester's claim of ineffective assistance of counsel was remanded by the Kentucky Court of Appeals for an evidentiary hearing, the Circuit Court again found that Hester was not entitled to relief based on his attorney's failure to investigate or present an alibi defense. In affirming the Circuit Court's denial of Hester's motion, the Court of Appeals relied on the standard announced by the Supreme Court in Strickland v. Washington for addressing ineffective assistance of counsel claims. 466 U.S. 668 (1984); Record No. 14-4, at 3-4. The Court of Appeals also relied on Wiggins v. Smith to provide counsel's duty of reasonable investigation. 539 U.S. 510 (2003); Record No. 14-4, at 4. The Court of Appeals went on to evaluate counsel's performance:

> In this case, trial counsel testified that he had spoken to Hester and his brother. But he did not do any additional investigation or make any additional attempts to find other witnesses because the date which Hester and Hudson gave for the barbeque did not match the night of the home invasion. Hester notes that Walls could have confirmed that the barbeque occurred on the date of the offense. However, Walls further testified that in July 2004 she "lost everything," and left

the apartment where she was staying. She explained that she essentially "disappeared" at that time and no one would have known how to contact her.

Considering the inconsistency in the dates provided by the known witnesses and the likely unavailability of Walls to confirm that the barbeque occurred on the night of the home invasion, we agree with the trial court that counsel's decision not to pursue the defense was based on sound trial strategy and was reasonable under the circumstances. Therefore, Hester has failed to show that his trial counsel's performance was deficient. Consequently, the trial court properly denied his motion for relief from the conviction.

[Record No. 14-4, at 5].

As summarized by the Court of Appeals, in addressing ineffective assistance of counsel claims, the Supreme Court articulated that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984).  To meet this standard, the Court set forth a two part test that a defendant must satisfy by a preponderance of the evidence.  First, defendants are required to show that their representation fell "below an objective standard of reasonableness." Id. at 687-88.  This standard is very deferential, with a "strong presumption that counsel's conduct 'falls within a wide range of reasonable professional assistance.'" Cope v. United States, 272 Fed. App'x 445, 448 (6th Cir. 2008) (quoting Mason v. Mitchell, 320 F.3d 604, 616-17 (6th Cir. 2003)); *see also* Strickland, 466 U.S. at 688-89. If a defendant is able to satisfy the first prong, the inadequacy of counsel's performance must be shown to have prejudiced the defendant.  In order to demonstrate prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  If a defendant meets both prongs of the test, deficient representation and actual prejudice, the defendant's sentence must be vacated or set

aside. However, if a defendant is determined to have failed to satisfy one (1) prong of the Strickland test, the Court does not need to consider the other. Id., at 697.

In relation to claims of inadequate investigation, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland v. Washington, 466 U.S. 668, 690-91 (1984).  In evaluating a claim of insufficient investigation, "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead . . . reasonable attorney[s] to investigate further." Wiggins v. Smith, 539 U.S. 510, 527 (2003).  Additionally, "[t]he relevant inquiry under Strickland is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable." Siripongs v. Calderon, 133 F.3d 732, 736 (9th Cir. 1998) quoted in Brown v. United States, NO. 1:03-cv-90/1:99-CR-89, 2006 U.S. Dist. LEXIS 23973, at *12 (E.D. Tenn. March 20, 2006); *see also* Janosky v. St. Amand, 594 F.3d 39, 49 (1st Cir. 2010).  Strickland makes clear that any decision made by an attorney to investigate or to refrain from investigating particular facts and circumstances must be evaluated for its reasonableness "viewed as of *the time of counsel's conduct*." Strickland v. Washington, 466 U.S. 668, 690 (1984) (emphasis added).

The Kentucky Court of Appeals correctly characterized the standard under federal law for ineffective assistance of counsel claims. Further, the standard was reasonably applied to the facts, considering the deference owed to counsel and the circumstances at the time of counsel's actions. Hester does not point to any part of the Court of Appeals' opinion that is contrary to federal law or unreasonable in light of the facts presented. [*See* Record No. 18, at 7-9]. Instead,

he challenges the factual determinations of the Court of Appeals without clear and convincing evidence to call those determinations into question, and gives broad allegations of violations of fundamental fairness. [Record No. 18, at 7-9]. This is insufficient to call into question the state court's denial of his claim, as the Court of Appeals' denial was not contrary to or an unreasonable application of federal law. Therefore, Hester is not entitled to relief based on his claim of ineffective assistance of counsel related to the investigation and presentation of an alibi defense.

<u>IV. CONCLUSION</u>

For the reasons set forth above, it is RECOMMENDED that Hester's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [Record No. 1] be DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation.  Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. <u>United States v. Campbell</u>, 261 F.3d 628, 632 (6th Cir. 2001); <u>Thomas v. Ann</u>, 728 F.2d 813, 815 (6th Cir. 1984).   General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004); <u>Miller V. Currie</u>, 50 F.3d 373, 380 (6th Cir. 1995).

Signed July 5, 2013.



Signed By:
*Edward B. Atkins*
United States Magistrate Judge