UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| ANGELO KREE HESTER, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 5: 12-354-DCR |
| ) | |
| V. ) | |
| ) | |
| DON BOTTOM, ) | **MEMORANDUM OPINION** |
| Warden, North Point Training Center, ) | **AND ORDER** |
| ) | |
| Respondent. ) | |

*** *** *** ***

This matter is pending for consideration of Petitioner Angelo Kree Hester's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2254. [Record No. 1] For the reasons discussed below, this motion will be denied. Further, a Certificate of Appealability will not be issued with respect to any issue raised in this action.[1]

Consistent with local practice, this matter was referred to United States Magistrate Judge Edward B. Atkins for consideration pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge

---

[1] A Certificate of Appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). When the Court's denial of the requested relief is based on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 437, 484 (2000). However, when the Court's denial is based on a procedural ruling, the movant must show that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists or reason would find debatable whether the Court was correct in its procedural ruling. In the present case, Hester has not made a substantial showing of a denial of a constitutional right for the reasons stated in this Memorandum Opinion and Order. Likewise, he has not demonstrated that the procedural issues he now seeks to raise are debatable among jurists of reason or that the questions are adequate to deserve encouragement to proceed further.

filed his Report and Recommendation ("R&R") on July 5, 2013. [Record No. 19] Based on his review of the record and the applicable law governing the motion, the magistrate judge recommended that Hester's motion be denied. Hester filed timely objections to the magistrate judge's R&R on July 19, 2013. [Record No. 20]

Although this Court must make a *de novo* determination of those portions of the magistrate judge's recommendations to which an objection is made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). A party who fails to file objections to a magistrate judge's proposed findings of fact and recommendation waives the right to appeal. *See Wright v. Holbrook*, 794 F.2d 1152, 1154-55 (6th Cir. 1986). Further, a general objection to the entirety of a magistrate judge's report has the same effect as a failure to object. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Having reviewed *de novo* the portions of the magistrate judge's report to which objections have been made, the Court concludes that Hester's objections are without merit. Therefore, the R&R will be adopted in full.

## I.

The Supreme Court of Kentucky summarized the factual and procedural posture of the underlying criminal matter as follows:

> On April 2, 2013, between 10 and 11 P.M., Chris Manley and his fiancee, Tammy Sanders, were at their home on Manhattan Drive in Lexington. Sanders was pregnant and due to give birth the next day. The couple was in bed watching television when the doorbell rang. Manley had been dozing and was dressed only in underclothes, so he asked Sanders to answer the door. When Sanders opened

the front door, she encountered a middle-aged woman who claimed to be lost and asked to use the house phone. Sanders allowed the woman to use the phone, and after an unsuccessful attempt to reach anyone, the woman thanked her and left. Sanders then returned to bed.

A short time later, the doorbell rang again. Manley looked outside and saw the woman who had rung the doorbell earlier. Again he asked his fiancee to answer the door. When Sanders opened the door, the woman asked for directions to a certain street. Sanders replied that she did not know the location of the street and called out to Manley to ask if he knew how to get there. At that point a masked man jumped from around the side of the house, pointed a gun at her, and told her to get into the house. The man yelled at her to "get down." As she tried to comply with this order, she was hit on the back and fell. To avoid landing on her stomach, she turned and fell instead on her right arm, dislocating her elbow and breaking the bone in multiple places.

Once Sanders was on the ground, more masked men with guns entered the house. Manley walked into the hallway and immediately put his hands in the air. One of the men demanded that he give them drugs and money, repeatedly asking, "Where's the good stuff?" One assailant backed Manley into the bedroom, ordered him to get down, and then shot him in the leg. The assailant continued to look for money and drugs. Another assailant threatened Manley, saying that he would be killed if he did not tell him where to find "the stuff." Manley said the only drugs he had were some prescription Klonopin in the kitchen. The men took a bag of change from the bedroom.

The men then confronted Sanders, put a gun to her head, and demanded to know where the drugs and money were. She told them she did not know what they wanted. She then directed them to the prescription drugs on the kitchen counter and told them that the only money in the house was in her purse and in Manley's wallet. She stated that she had jewelry in her bedroom. The masked men took her purse and jewelry before leaving the residence.

After the men left, Sanders made her way to Manley, who had already called 911. Sanders took the phone and followed the operator's directions to place a tourniquet on Manley's leg. Soon, Emergency Medical Services arrived and took the couple to Central Baptist Hospital.

At the hospital, Manley was admitted for observation for his gun shot wound. He remained under observation for twenty-four hours and then remained at the hospital with Sanders while she had an operation on her elbow. On April 26th, two days after the home invasion, Sanders began leaking amniotic fluid, so the doctors induced labor and she gave birth to a healthy baby.

> Sanders saw at least four armed men on the night of the home invasion, and Manley saw three different men. Neither Sanders nor Manley could identify any of the men, whose faces had been concealed by masks, but they had been able to tell that the men were African-American and knew that each had been carrying a gun. Police received a tip in November 2003 that a woman named Wanda Hughes was involved in the robbery. Sanders and Manley identified Hughes in a photo line-up as the woman who came to their house on the night of the invasion. Hughes was arrested and led the police to five other individuals — Adrian Brown, Arian Brown, Teddy Hawkins, Jeremy Rice, and [Angelo Hester] — whom she claimed were involved in the crime.
>
> Appellant was charged with first-degree robbery and first-degree burglary, and with being a second-degree persistent felony offender and was tried in July 2004. He was tried with Adrian Brown and Jeremy Rice. At trial, he testified in his own defense, claiming that he was not present during the home invasion and that he did not even know several of the alleged participants in the crime. Nevertheless, the jury convicted him on all three counts and he was sentenced to twenty years in prison.

*Hester v. Commonwealth of Ky.*, 2004-SC-00794-MR, 2006 WL 2707441, at *1-2 (Ky. Sept. 21, 2006); [*See also* Record No. 19, pp. 1-3.]

Hester's conviction and sentence were affirmed by the Supreme Court of Kentucky.[2] [Record No. 14-13] He then filed a motion pursuant to Kentucky Rule of Criminal Procedure 11.42, which was denied by the circuit court without a hearing.[3] However, the Kentucky Court of Appeals reversed and remanded the matter to the lower court for an evidentiary hearing on

---

[2]On direct appeal, Hester argued that the trial court erred by: (1) limiting the defense's cross-examination of Arian Brown; (2) refusing to recuse; (3) failing to enter a directed verdict in his favor; (4) allowing the prosecution to question Wanda Hughes about her "drug connection" to him; and (5) denying his motion in limine to bar testimony concerning the victim's pregnancy. [Record No. 14-13, p. 1]

[3]In the 11.42 motion, Hester presented the claims that: (1) counsel was ineffective for failing to move for a severance of the co-defendant, and (2) counsel was ineffective for failing to call alibi and mitigating witnesses. On appeal to the Court of Appeals, Hester alleged that the trial court erred by failing to conduct an evidentiary hearing on these issues.

Hester's claim of ineffective assistance of trial counsel based on the failure to assert an alibi defense and the failure to call mitigation witnesses.[4] [Record No. 14-9] After conducting an evidentiary hearing on the issue of counsel's failure to raise an alibi defense,[5] the circuit court again denied Hester's motion. The Kentucky Court of Appeals affirmed this decision on January 6, 2012.

On December 3, 2012, Hester filed the current petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging nine grounds for relief. First, he alleges two ineffective assistance of counsel claims: 1) that his trial counsel was ineffective because counsel failed to file a motion to sever his trial from his co-defendants and failed to present an alibi defense, and 2) that *appellate* counsel was ineffective because he failed to raise claims on direct appeal regarding trial counsel's failure to move to sever the defendants and to present an alibi defense. Next, he argues that he was denied due process of law due to the following alleged errors by the trial court: the admission of testimony concerning Hester's drug activities; erroneously allowing testimony about the victim's pregnancy; erroneously limiting the scope of his cross-examination of Arian Brown; and the trial judge's refusal to recuse herself after making prejudicial statements to the media. Finally, Hester asserts that the effect of these "cumulative errors" denied him due process of law.

---

[4] At the hearing, Hester expressly dropped his claim of ineffective assistance of counsel based on the failure to call mitigation witnesses. [Record No. 14, p. 5]

[5] Testimony revealed that Hester's trial counsel had explored the alibi defense but, due to a discrepancy in the dates regarding his supposed alibi, decided not to pursue it.

The magistrate judge found that several of Hester's claims were procedurally defaulted due to Hester's failure to properly present the issues to the state court.[6] Regarding the other claims, the magistrate judge found that the Kentucky state court decisions on these issues were not contrary to or an unreasonable application of federal law.

## II.

According to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Hester's writ of habeas corpus may be granted only if the state-court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Under the "contrary to" test, "a state court's decision is contrary to clearly established Federal law if it (1) arrives at a legal holding that contradicts a Supreme Court case, or (2) involves facts that are materially indistinguishable from a Supreme Court case but nonetheless arrives at a substantially different result." *Jones v. Jamrog*, 414 F.3d 585, 591 (6th Cir. 2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). An unreasonable application of clearly established federal law occurs "when a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a prisoner's case." *Id*. In determining whether a case involves an unreasonable application of federal law, the question is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, 529 U.S. at 409-11.

---

[6] Specifically, the magistrate judge found that both ineffective assistance of counsel claims — both by trial counsel and appellate counsel — regarding trial counsel's failure to file a motion to sever were defaulted. Additionally, the magistrate judge found that the claims regarding Hester's alleged denial of due process of law for the trial court allowing testimony concerning his drug activities and the victim's pregnancy were defaulted.

## III.

As outlined more fully below, although Hester argues that the magistrate judge's report is "fundamentally unfair," he has only specifically objected to: (1) the determination that certain claims were procedurally defaulted; (2) the finding that his claim of ineffective assistance of appellate counsel should have been raised in his RCr 11.42 petition; and (3) the magistrate judge's alleged failure to address his claim that "cumulative errors" during the proceedings resulted in the violation of his due process rights.

### A.     Procedurally Defaulted Claims

Hester disagrees with the magistrate judge's finding that certain claims were procedurally defaulted because of his failure to raise the issues at the appropriate stage at the state-court level. He argues that, because he did not waive any of these arguments, they cannot be procedurally barred. It appears that this objection is based on a misunderstanding of § 2254 proceedings and applicable law. The issue is not whether Hester intended to waive the arguments. Instead, these matters are procedurally defaulted because Hester did not properly exhaust all his available state court remedies regarding these arguments. 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that [] the applicant has exhausted the remedies available in the courts of the State" or "there is an absence of available State corrective process;" or "circumstances exist that render such process ineffective to protect the rights of the applicant.")

A state prisoner may procedurally default a claim for purposes of § 2254 by failing to raise it in the state court, or pursue the claim through the state's ordinary appellate review procedure. *O'Sullivan v. Boerckel,* 526 U.S. 838, 847 (1999). Any such claim will be

procedurally defaulted if, at the time the prisoner's habeas petition is filed, state law does not permit the prisoner to further pursue the claim. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Engle v. Issac*, 456 U.S. 107, 125 n. 28 (1982). In such instances, the problem with the claim is procedural default, not failure to exhaust available state remedies.

The Supreme Court has explained that,

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman,* 501 U.S. at 750.

### 1. Ineffective Assistance of Counsel

Hester argued his claim of ineffective assistance of counsel for failure to file a motion to sever before the circuit court during the RCr 11.42 hearing. However, he failed to appeal the circuit court's denial to the Kentucky Court of Appeals. Accordingly, this claim was never presented to the appellate court and is defaulted. *See* RCr 12.05. In his RCr 11.42 motion, the circuit court found that Hester was unable to show that he would have obtained a different outcome if his trial had been severed from Adrian Brown's trial. When Hester appealed to the Kentucky Court of Appeals, he argued that the circuit court erred in failing to hold an evidentiary hearing on his RCr 11.42 petition, but made no mention of the circuit court's findings on the severance issue.[7] [Record No. 14-11, p. 18-24]

---

[7]Even if this claim were not procedurally defaulted, this Court could not say that the circuit court's finding on this claim constituted an unreasonable application of federal law. The circuit court applied *Strickland* properly and considered the prejudicial effect, if any, of the failure to file

Hester now argues that Kentucky Rule of Criminal Procedure 12.05 "no longer requires a Kentucky state prisoner/litigant to seek rehearing or discretionary review of a decision of the Kentucky Court of Appeals. The Magistrate is wrong." [Record No. 20, p. 2] Rule 12.05 states that

> In all appeals from criminal convictions or post-conviction relief matters a litigant shall not be required to petition for rehearing or to file a motion for discretionary review to either the Kentucky Court of Appeals or Kentucky Supreme Court following an adverse decision of either the circuit court or Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. *Rather, when the claim has been presented to the appellate court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies available for that claim.*

RCr 12.05 (emphasis added). Hester misreads this rule and the magistrate judge's report. Rule 12.05 does not obviate the requirement that a § 2254 litigant in Kentucky present his claim to the appellate courts for review. *See Shane v. Taylor*, Case No. 3:11-CV-643-CRS, 2012 U.S. Dist. LEXIS 185639, at *43-44 n.4 (.D. Ky. July 24, 2012) ("The federal district courts for both the Western and Eastern Districts of Kentucky have held, based on the language of RCr 12.05, that a Kentucky prisoner exhausts his available state court remedies when he presents his claims at trial and by way of appeal to the next highest appellate court."); *see also Oliver v. Parker*, No. 6:10-CV-21-GFVT-HAI, 2012 U.S. Dist. LEXIS 186537 (E.D. Ky. Aug. 9, 2012) (Finding a claim procedurally defaulted under Kentucky law because the petitioner failed to present the claim to the appellate court after the denial of his RCr 11.42 motion). Even though Hester did

---

a motion to sever. [Record No. 14-12, p. 3 ("Hester has failed to present any evidence that shows that the outcome of his trial would have been different had Adrian Brown been severed. . . . Therefore, trial counsel's performance did not rise to the level of ineffectiveness necessary to overcome *Strickland's* heavy burden.")]

-9-

appeal the trial court's decision to dismiss his RCr 11.42 motion, he did not raise this claim during that appeal. Accordingly, it has not been presented by way of appeal to a Kentucky appellate court.

Additionally, Hester does not argue actual innocence, nor does the evidence presented manifestly demonstrate his innocence or sufficiently show a fundamental miscarriage of justice that would overcome procedural default. *See, e.g. Dretke v. Haley*, 541 U.S. 386, 388 (2004). And Hester's objections do not address any potential cause for his failure to present the issue to the appellate court. Accordingly, the Court will overrule his first objection.

## 2. Ineffective Assistance of Appellate Counsel[8]

Next, Hester argues that his failure to raise ineffective assistance of appellate counsel should be excused because, at the time of his appeal, Kentucky did not recognize ineffective assistance of appellate counsel as a cognizable claim. But as the magistrate judge pointed out, this is the first instance in which Hester alleges ineffective assistance of appellate counsel for failure to argue that his trial counsel was ineffective for failing to file a motion to sever. It is true that when Hester filed his 11.42 motion in 2008, a claim for ineffective assistance of appellate counsel was not a viable claim under Kentucky law. *See Hicks v. Commonwealth*, 825 S.W.2d 280 (Ky. 1992). However, in 2010, the Supreme Court of Kentucky expressly reversed *Hicks* and recognized ineffective assistance of appellate counsel claims "premised on appellate counsel's alleged failure to raise a particular issue on direct appeal." *Hollon*, 334 S.W.3d at 436.

---

[8]The magistrate judge found that even if this claim were not procedurally defaulted, it was otherwise meritless because Hester failed to meet the *Strickland* standard. [Record No. 19, p. 13 n.1] Hester did not object to this finding.

That ineffective assistance of appellate counsel was not a recognized claim in 2008 does not excuse Hester from raising it at the state court level in his Rule 11.42 motion. "If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim." *Engle v. Issac*, 456 U.S. 107, 130 (1982). As the magistrate judge noted, had Hester not failed to present the claim to the state court, "his claim could have been the one in which [the Kentucky Supreme Court] changed [its] minds." *Johnson v. Beckstrom*, Civil Action No. 6:08-194-ART, 2011 WL 3439135, at *1 (E.D. Ky. Aug. 5, 2011). Accordingly, the Court finds no error with the magistrate judge's finding that the ineffective assistance of appellate counsel was procedurally defaulted.

Hester also attaches to his objections an affidavit from Edward C. Monahan, the Public Advocate ("DPA") for the Commonwealth of Kentucky. [Record No. 20-1] This affidavit, which was submitted to the Franklin Circuit Court on April 30, 2013, details budgetary issues suffered by the Department of Public Advocacy in recent years. Hester apparently attaches this exhibit as evidence that his DPA counsel could not have provided effective assistance of counsel. He argues "if the Top and Leading DPA Advocate for the entire state of Kentucky swears that its department has been operating without the adequate funding or Staff to adequately represent anyone assigned to them, then who can say that [Petitioner] received adequate legal representation at trial or on direct appeal?" [Record No. 20, p. 9] However, the implication advanced by Hester's argument — that *every* defendant represented by a DPA attorney from 2005 to the present received ineffective assistance of counsel — is spurious. Additionally, he ignores the fact that his RCr 11.42 attorney was successful on appeal, insofar as she had the

matter remanded for an evidentiary hearing on trial counsel's decision not to call alibi witnesses. In short, the Court is not persuaded by either of Hester's ineffective assistance of counsel claims.

### 3. Admission of Evidence Regarding Hester's Drug Activity and the Victim's Pregnancy

Hester also claims that he was denied due process in violation of the United States Constitution by the trial court's failure to exclude testimony regarding his alleged drug activities and the trial court's failure to limit the scope of testimony on the victim's pregnancy. The magistrate judge found that these claims were also defaulted because Hester did not fairly present these issues to the state court as violations of Hester's federal rights.[9] *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) ("To fairly present a claim to a state court a petitioner must assert both the *legal* and factual basis for his or her claim.").

During his direct appeal, Hester raised these two issues regarding the admission of testimony on his drug activities and the victim's pregnancy. However, he relied upon the Kentucky Rules of Evidence and Kentucky case law when presenting these claims. [*See* Record Nos. 14-16, 19.] The magistrate judge found that even though the last sentence of each argument mentioned federal constitutional provisions, Hester did not make a fair presentation of these claims as violations of federal law to the state court. *McMeans v. Brigano*, 228 F.3d 674, 681 (internal citation and quotation marks omitted) ("General allegations of the denial of rights to . . . . due process do not fairly present claims that specific constitutional rights were violated.").

---

[9]Although Hester did not specifically object to this finding, he stated in his objections that he "objects to the entire content of Section II on Page 4 entitled 'Claims Subject to Procedural Default' alleging that the Four Claims indicated are all procedurally defaulted as they were not properly presented to the State Court." [Record No. 20, p. 5]

Nor are the issues of admission or exclusion of evidence under 403 and 404(b) "within the mainstream of constitutional law." *Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005). The Court finds no error with the magistrate judge's finding that these claims are procedurally defaulted.

Even if this claim was not defaulted, the trial court's decision to allow this testimony is not contrary to, and does not involve an unreasonable application of Supreme Court precedent. One witness, Wanda Hughes, testified that she became acquainted with a co-defendant because her boyfriend bought drugs from him. The witness never identified a specific transaction, nor did she ever indicate that Hester was involved in this alleged drug activity. [Record No. 14, pp. 24-25] She did, however, identify Hester as "an associate" of the co-defendant. The trial court found the statement relevant because it showed how Hughes knew Hester, which fell into the "identity" exception. [*Id.*, p. 26] Regarding the victim's testimony regarding her pregnancy, the court found that the evidence was relevant because it showed how the victim's injury occurred and was minimally prejudicial because the jury was informed that she later gave birth to a healthy baby. [Record No. 14-13, pp. 20-21] These evidentiary determinations are not contrary to, or involve an unreasonable application of, Supreme Court precedent. Accordingly, Hester's objections to these issues will be overruled.

### B. Cumulative error

Hester also alleges that he was denied due process of law because of the effect of cumulative errors in this case. The magistrate judge did not expressly address this issue in his report and recommendation. Although it is unclear whether the "cumulative error" doctrine has

any place in § 2254 proceedings where the petitioner has failed to assert this claim at any other proceeding, the Court will briefly address this claim.

"The cumulative effect of errors that are harmless by themselves can be so prejudicial as to warrant a new trial." *United States v. Sypher*, 684 F.3d 622, 628 (6th Cir. 2012). To obtain a new trial under this doctrine, a defendant "must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004). The cumulative error analysis applies where there are two or more actual errors. It does not apply to the cumulative effect of non-errors. *Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir. 1999).

Because Hester has not shown error with any state court's proceeding, relief based on the cumulative effect of alleged errors is not appropriate. *See United States v. Villarreal*, 324 F.3d 319 (5th Cir. 2003) (holding that relief "based on the cumulative effect of several alleged errors is a rarity" and the cumulative error doctrine has no application where a defendant has failed to demonstrate any individual instances of error.) Accordingly, the Court finds no error with the magistrate judge's failure to address this issue, and Hester's objection will be overruled.

**IV.**

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** as follows:

1. The Report and Recommendation filed by United States Magistrate Judge Edward B. Atkins on July 5, 2013 [Record No. 19] is **ADOPTED** and **INCORPORATED** herein by reference.

    2.    The Objections to the Report and Recommendations filed by Angelo Kree Hester on July 19, 2013, [Record No. 20] are **OVERRULED**.

    3.    All claims contained in the petition filed herein on December 3, 2012 [Record No. 1] are **DISMISSED**, with prejudice.

    4.    Any request for this Court to issue a Certificate of Appealability is **DENIED**.

    5.    This habeas action filed pursuant to 28 U.S.C. § 2254 [Record No. 1] is **DISMISSED** from the Court's docket. A separate judgment resolving all claims in favor of Respondent Commonwealth of Kentucky shall be entered this date.

This 20th day of August, 2013.

Signed By:
*Danny C. Reeves* DCR
United States District Judge